SHIVERS, Judge.
In this workers’ compensation case, Hir-schensohn appeals an order of the deputy commissioner which fails to award any benefits beyond those voluntarily paid by the employer/carrier. Appellant contends that the deputy commissioner erred in determining her average weekly wage (AWW), in finding that appellant reached maximum recovery on October 7, 1982, in not awarding temporary total disability (TTD) benefits in excess of those paid by the employer/carrier, and in denying the claim for costs, penalties, interest and attorney’s fees. Appellant also contends that there is no competent, substantial evidence to support the deputy commissioner’s finding that TTD benefits were paid at a rate of $115.17 per week. We affirm in part, reverse and remand in part.
In the order sub judice the deputy commissioner did not explicitly state which subsection of section 440.14, Florida Statutes, was used to determine the claimant's AWW. It is apparent, however, that the mathematical method used was that of section 440.14(l)(a).[1] This method cannot be used unless the injured employee has worked substantially the whole of 13 weeks immediately preceding the injury. The statute states that the term “during substantially the whole of 13 weeks” shall be deemed to mean during not less than 90% of the total customary full-time hours of employment within such period considered as a whole. The claimant testified that she was absent from work for a portion of the 13 weeks prior to her accident. There is evidence in the record to show that claimant worked 57 days during the three months prior to the accident. The record, however, does not reveal what appellant’s total customary full-time hours of employment within the 13 week period were. Without a proper predicate in the record, we cannot say that the deputy commissioner erred in utilizing the method of section 440.14(l)(a). Cf. Pate v. Maddox Foundry & Machine Works, 414 So.2d 524 (Fla. 1st DCA), rev. dismissed, 419 So.2d 1199 (Fla. 1982) (stating that the issue of AWW could be decided within the parameters of § 440.-14(1) without referring to a “similar employee” where the record showed that appellant worked more than 90% of a 40 hour week during the 13 weeks before the injury).
*539 The record here contains conflicting medical testimony concerning the claimant’s orthopedic condition. Dr. Carlson, claimant’s chiropractor, testified that claimant suffered from low back strain and sub-luxation. He stated that claimant had not reached maximum medical improvement (MMI) at the time of the hearing and that he had recommended she not work from the date of accident, February 26, 1982, through the end of December 1982. However, Dr. Drucker, an orthopedic surgeon, examined claimant on October 7, 1982, and testified that claimant had reached MMI and was not TTD at the time he saw her, that she had no physical residual impairment, and that she was not in need of any active care.
The record also contains conflicting testimony concerning claimant’s psychiatric condition. Dr. Green, claimant’s psychologist, diagnosed depressive reaction with overtones of agitation causally related to the accident. As of the date of the hearing he felt that claimant had not reached MMI psychologically and that she was not able to return to work. However, Dr. Pinosky, a psychiatrist, testified that he saw and evaluated claimant on February 7, 1983, that claimant had no psychiatric condition as a result of the fall and that she needed no psychological treatment because of the fall.
A deputy commissioner may accept the testimony of one doctor and reject that of another, even without explanation. Buro v. Dino’s Southland Meats, 354 So.2d 874 (Fla.1978). The deputy commissioner in the instant case acknowledged the conflicting testimonies of the various doctors. We cannot say that the deputy commissioner erred in accepting the testimonies of a psychiatrist and orthopedic surgeon over those of a psychologist and a chiropractor. We note, however, that the doctors relied upon by the deputy commissioner, Drs. Drucker and Pinosky, did not examine the claimant until October 7, 1982, and February 7, 1983, respectively. For the periods prior to these dates, the only evidence in the record concerning claimant’s condition was the testimonies of Drs. Carlson and Green, both of whom testified that claimant had not reached MMI and was not capable of working. Therefore, we do not think that TTD benefits can be denied appellant prior to February 7, 1983.
Even if there was no medical evidence of total inability to work during this period of time, denial of TTD benefits here could not rest on claimant’s failure to seek work in the absence of evidence that claimant knew or should have known that she was medically released for that purpose. Fulmer-Orlando v. Taylor, 419 So.2d 734 (Fla. 1st DCA 1982); Lakeland Construction Co. v. Flatt, 433 So.2d 1253 (Fla. 1st DCA 1983). Therefore, we reverse the order sub judice insofar as it denies TTD benefits prior to February 7,1983. In light of this reversal, we remand to the deputy commissioner to award appropriate benefits and to reconsider the claim for costs, penalties, interest and attorney’s fees.
In all other respects, the order sub judice is affirmed. The other issue raised by appellant, relating to the compensation rate of $115.17 per week, was not raised before the deputy commissioner. Therefore, we will not address it on appeal. See Mezquita v. Florida Steel Corp., 419 So.2d 675 (Fla. 1st DCA 1982).
AFFIRMED in part, REVERSED and REMANDED in part.
WIGGINTON, J., concurs.
MILLS, J., concurs in part and dissents in part with written opinion.

. If the injured employee has worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of 13 weeks immediately preceding the injury, his average weekly wage shall be one-thirteenth of the total amount of wages earned in such employment during the 13 weeks. As used in this paragraph, the term "substantially the whole of 13 weeks” shall be deemed to mean and refer to a constructive period of 13 weeks as a whole, which shall be defined as a consecutive period of 91 days, and the term "during substantially the whole of 13 weeks" shall be deemed to mean during not less than 90 percent of the total customary full-time hours of employment within such period considered as a whole.